LOUIS COHEN, as Administrator of the Estate of RAY COHEN, Deceased, Appellant, *v.* MANUFACTURERS SAFE DEPOSIT COMPANY, Respondent.

Argued November 13, 1947; decided March 19, 1948.

*Thomas J. Williams* for appellant. I. Property is deemed lost when one casually and involuntarily parts with it. (*Sovern* v. *Yoran,* 16 Ore. 269; *Loucks* v. *Gallogly,* 1 Misc. 22; *Foulke* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269; *Foster* v. *Safe Deposit Co.,* 264 Mo. 89.) II. The owners or proprietors of a private or public place are not the agents, fiduciaries or bailees of the owner of lost property. (*Osborn* v. *Cline,* 263 N. Y. 434; *Reisinger* v. *Pullman Co.,* 252 App. Div. 87; *Cornelius* v. *Berinstein,* 183 Misc. 685; *Carples* v. *Cumberland Coal & Iron Co.,* 240 N. Y. 172.) III. The place where lost property is found creates no exception to the rule. (*Sovern* v. *Yoran,* 16 Ore. 269; *Durfee* v. *Jones,* 11 R. I. 588; *Matter of Savarino,* 1 F. Supp. 331; *Hamaker* v. *Blanchard,* 90 Pa. 377.) IV. The finder of a lost article is entitled to it as against all the world.

(*Garramone* v. *Simmons,* 177 Misc. 330.) V. A safe deposit vault is semipublic. (*Toledo Trust Co.* v. *Simmons,* 52 Ohio App. 373.)

*Henry Landau* and *Leonard G. Bisco* for respondent. I. When the package was discovered on the floor of the booth located within the vault, it was not lost property. (*Foulke* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269; *Loucks* v. *Gallogly,* 1 Misc. 22; *Flax* v. *Monticello Realty Co.,* 185 Va. 474; *Foster* v. *Safe Deposit Co.,* 264 Mo. 89; *Silcott* v. *Louisville Trust Co.,* 205 Ky. 234; *Pyle* v. *Springfield Marine Bank,* 330 Ill. App. 1.) II. The nature of the place where, and the circumstances under which, the property was found, do not lead to the inference that the package was lost rather than mislaid.

LOUGHRAN, Ch. J. In this controversy, which was submitted to the Appellate Division upon an agreed statement of facts, pursuant to sections 546–548 of the Civil Practice Act, the court directed judgment for the defendant and gave the plaintiff leave to bring the case here.

The agreed facts are stated in the following terms: The defendant maintained and operated in the city of New York a safe deposit vault equipped with metal boxes and with small booths; each booth was furnished with a desk or counter and a chair; access to the vault was controlled and limited to employees of the defendant and to lessees of the safe deposit boxes; upon the floor near the desk in one of the booths the intestate of the plaintiff—a lessee of one of the boxes—came upon a package containing United States currency; neither party has any proof as to how that package found its way to the floor of the booth.

The question in difference is stated by the parties in these words: "Plaintiff claims and demands that upon the foregoing facts judgment should be rendered decreeing that plaintiff is entitled to possession of the package containing the currency as against defendant on the ground that plaintiff [through his intestate] is the finder of the lost property which defendant denies, contending that said package was not lost and that it was always in the custody of defendant as agent of the true owner thereof."

The first thing to be noticed is the scope of the present proceeding. Such a submission of controversy calls upon the courts merely to define the effect of the agreed facts as matter of law and excludes power to find any additional fact — even if the submitted facts logically and reasonably admit of further important inferences which a trier of the fact might very well draw. (See *Feist* v. *Fifth Avenue Bank,* 280 N. Y. 189; *Manhattan Storage & Warehouse Co.* v. *Movers Assn.,* 289 N. Y. 82, 86.)

The statement of agreed facts is silent in respect of the functions of the defendant as a safe deposit company. Even so, we feel safe enough in declaring the company to be in some degree a bailee of property deposited in its rented boxes. (See Banking Law, § 317, subds. 1, 2, and § 331, subd. 4; *Roberts* v. *Stuyvesant Safe Deposit Co.,* 123 N. Y. 57; *Carples* v. *Cumberland Coal & Iron Co.,* 240 N. Y. 187.) The company, in consequence, would possibly have the sounder claim upon custody of the currency in question, if a customer had dropped it upon the floor of the booth,— at least if the customer had first removed the currency from his safe deposit box. But that hypothesis has no warrant in the submission. Indeed, the statement of agreed facts proclaims a complete lack of proof as to where the currency came from and it may conceivably have been the property of a stranger who entered the vault under court order (see Tax Law, § 228; Mental Hygiene Law, § 51-a).

Again the defendant company would even more surely be in the better position if in fact the currency had not been " lost ", but had merely been " mislaid ", e.g., if the owner had not involuntarily let the package slip to the floor of the booth, but had purposely placed it upon the nearby table and had then forgotten it. (See *Foulke* v. *N. Y. Consolidated R. R. Co.,* 228 N. Y. 269; *Loucks* v. *Gallogly,* 1 Misc. 22.) But that hypothesis, too, has no warrant in the submission.

In granting judgment for the defendant, the Appellate Division said: " Cases relating to the loss of property in a public place such as a street or roadway or the floor of premises open generally to the public are not here controlling. This package of currency was not found in a public place but in a booth or com-

partment located within a safe deposit vault, access to which was denied to the public generally and limited to customers of the safe deposit company and its employees. The package remained in the custody of the deposit company as representative or agent of the owner, and such company owed a duty to the true owner and is the lawful custodian of the package for his benefit." (271 App. Div. 428, 430.) These words, as we read them, imply acceptance of a positive rule of law to this effect: custody of a lost chattel belongs to the finder when the finding occurs in a place open to the public, whereas if the finding occur in a private place, the owner of that place and not the finder is entitled to such custody.

To what extent and on what legal theory such a distinction may be supportable is a question that has provoked a large variety of opinion and the pertinent case law appears to be equally inconclusive (cf. *Bridges* v. *Hawkesworth*, 21 L. J. [Q. B.] 75 [1851]; *South Staffordshire Water Co.* v. *Sharman*, [1896] 2 Q. B. 44, 47; *Hannah* v. *Peel*, [1945] 1 K. B. 509; Holmes, The Common Law, p. 222; Pollock and Wright, Possession in the Common Law, pp. 39–41; Salmond on Jurisprudence [9th ed.], pp. 382–384; Goodhart, Three Cases on Possession, 3 Cambridge L. J. 195; Riesman, Possession and the Law of Finders, 52 Harv. L. Rev. 1105; 1 Halsbury's Laws of England [2d ed.], pp. 731–733). But we do not reach that dispute in this proceeding. Although access to the safe deposit vault of the defendant company was limited to its customers and employees, yet that agreed fact does not without more conclusively establish the character of the vault as being a private rather than a public or quasi-public place. On the contrary, admission to many places of public or quasi-public resort or accommodation is similarly restricted, as everybody knows. (Cf. *Aaron* v. *Ward*, 203 N. Y. 351, 356–357.) Moreover, any difference between the premises of the average shopkeeper (cf. *Bridges* v. *Hawkesworth, supra*), and other commercial establishments, based on whether service is held out to a larger or smaller group of customers, would seem to be one of degree only, which would ordinarily give rise to a question of fact, and nothing in the statement of agreed facts tells us how many people the defendant company had for its patrons. The extent of actual control

exercised over particular commercial premises by the occupier may possibly be a sounder test of his right to custody of a chattel found therein by an invitee (see Pollock and Wright, *op. cit. supra,* at pp. 39–41). But that test likewise cannot here be applied. Indeed, nowhere in the statement of agreed facts is it said that the defendant company ever supervised the presence of any persons within its safe deposit vault or made any record of their entrances and their exits. (Cf. *Silcott* v. *Louisville Trust Co.,* 205 Ky. 234, 235–236.) Accordingly we can here neither affirm nor deny as matter of law the validity of the principle enunciated by the Appellate Division.

Nor has any case come to our attention where custody of property lost in a safe deposit vault has been committed to the safe deposit company as against the finder, on the basis of the nature of the premises alone and in the absence of other significant factors. In *Silcott* v. *Louisville Trust Co.* (*supra*) on which the Appellate Division here relied, the Kentucky court acted on an assumption that '' any chattel found in one of these private rooms, access to which was had only by persons renting the boxes, must have been the property of one of the trust company's customers '' (p. 237). As we have already observed, we are not free to make any such assumption in this case. Like assumptions of fact appear also to underlie the decisions in *Pyle* v. *Springfield Marine Bank.* (330 Ill. App. 1, 5) and *Foster* v. *Fidelity Safe Deposit Co.* (264 Mo. 89, 103) and the *Foster* case is further distinguishable as involving '' mislaid '' rather than '' lost '' property.

In brief, we have no alternative but to dismiss this submission for its failure at every point to pose any determinative issue of law.

Counsel have made no reference to section 435–4.1 of the Administrative Code of the City of New York. It is thereby provided: '' *Reporting and depositing lost money or property.* — a. Any person who finds any lost money or property of or exceeding the value of ten dollars shall report such finding to and deposit such money or property in a police station house within ten days after the finding thereof. Such money or property shall thereupon be transmitted to the property clerk who shall make entry of such deposit in his records. Such money or

property as shall remain in the custody of the property clerk for a period of three months without a lawful claimant entitled thereto shall be turned over to the person who found and deposited the same. * * * b. Any person who shall violate, or refuse, or neglect to comply with any provision of this section, upon conviction thereof, shall be punished by a fine of not more than one thousand dollars or imprisonment not exceeding one year, or both." (Local Law, 1943, No. 47, in effect Dec. 30, 1943.) This legislation apparently was enacted in response to observations made by Mr. Justice EDER in *Garramone* v. *Simmons* (177 Misc. 330, 334). Whether its provisions have application to the case in hand is, we think, a question upon which the City of New York should have an opportunity to be heard. (Cf. *Manhattan Storage & Warehouse Co.* v. *Movers Assn.*, 289 N. Y. 82, 89–90, *supra; Costello* v. *Simmons*, 269 App. Div. 823, affd. 295 N. Y. 801.)

Perhaps we should add that no question is here presented respecting the ultimate rights of the present parties in the event that the owner of the currency in question continues to remain unidentified. (Cf. *Silcott* v. *Louisville Trust Co., supra,* at p. 238; Riesman, Possession and the Law of Finders, 52 Harv. L. Rev., at pp. 1125–1126.)

The judgment should be reversed, without costs, and the submission dismissed, without prejudice to a new submission or the commencement of an action.

THACHER, J. (dissenting). The majority of the court is about to hold that, if the facts upon which the parties have agreed were proved upon a contested trial of the issues, judgment might very well go for the defendant, if inferences should be drawn in support of the judgment, but that, in the consideration of a controversy submitted upon an agreed statement of facts, pursuant to sections 546–548 of the Civil Practice Act, factual inference can have no part, and that we must therefore dismiss this proceeding. We believe that no inferences of fact in addition to the facts agreed upon are necessary to a decision in this case, and that neither *Feist* v. *Fifth Avenue Bank* (280 N. Y. 189) nor *Manhattan Storage & Warehouse Co.* v. *Movers Assn.* (289 N. Y. 82, 86) require the dismissal of this proceeding.

In the *Feist* case (*supra*) the ultimate question of fact presented was whether an investment made by a trustee was a prudent one, and there was no agreement upon this question. Similarly in the *Manhattan Storage & Warehouse Co.* case (*supra*), the ultimate question of fact sought to be determined was the validity of a provision in an agreement between an employer and a labor union challenged as an unreasonable restraint of competition. In neither case could the controversy be determined upon the facts agreed upon. Each was a submission of conflicting facts and circumstances upon which the court was asked to found an ultimate conclusion of fact upon which the parties had not and could not agree. This is quite a different case, one in which the Appellate Division has not found it necessary to draw any inferences of fact additional to those agreed upon but has decided a question of law presented solely upon the facts agreed upon, and that is the determination of law we are now required to review without drawing factual inferences of our own.

Lawful possession of the currency found within the safe deposit vault turns upon *de facto* control of the premises possessed and purposefully exercised by the safe deposit company to exclude strangers from the place where the currency was found. This control is not left to inference; it is stipulated as a fact and reinforced by legal duty imposed upon the safe deposit company as a custodian and a bailee of the property (*Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57; *Carples* v. *Cumberland Coal & Iron Co.*, 240 N. Y. 187). The package of currency was found in a small booth located within the defendant's safe deposit vault, access to which was limited to its own employees and its customers, for whose exclusive use the booth was furnished. These facts establish not only the intention and the right, but the duty, to retain custody, predicated upon its control and exclusive possession of the vault and the booth where the currency was found. This right and this duty can neither be impaired nor enhanced by proof of other facts suggested as necessary in the opinion of the court. The statement of agreed facts tells us that none but customers and employees of the company were admitted. So far as the employees are concerned, their access is the access of the company and their possession is the possession of the company.

At common law possession of chattels primarily depends upon the will and intention of the occupier of premises to exclude strangers and upon *de facto* control. In other words *de facto* control is possession in law. (Pollock and Wright, Possession in the Common Law, pp. 11–16, 37–42.) Sir FREDERICK POLLOCK states (p. 40): " The finder's right starts from the absence of any *de facto* control at the moment of finding " and that *de facto* control is constituted by the occupier's general power and intent to exclude unauthorized interference.

Comparing views of Mr. Justice HOLMES and Sir FREDERICK POLLOCK, Mr. Justice BIRKETT, in *Hannah* v. *Peel* ([1945] 1 K. B., 509), said, in discussing this subject (pp. 520–521): " A difficulty, however, arises, because the rule which governs things an occupier possesses as against those which he does not, has never been very clearly formulated in our law. He may possess everything on the land from which he intends to exclude others, if Mr. Justice Holmes* is right; or he may possess those things of which he has a de facto control, if Sir Frederick Pollock is right." (*Holmes, Common Law, p. 221.) There could be no better illustration of both of these propositions than the *de facto* control and exclusion of strangers from the premises which the parties have agreed was exercised by the safe deposit company in this case.

We are confirmed in our conclusion that the judgment below was correct and should be affirmed by the fact that wherever the question has arisen in an American court the right of the safe deposit company to the possession and custody of currency and securities lost or mislaid in a safe deposit vault, as against all but the true owner, has been sustained. As we read these decisions they turn, not upon inferences of fact, but upon legal conclusions predicated upon facts no stronger than those agreed upon in this case. (*Silcott* v. *Louisville Trust Co.*, 205 Ky. 234; *Foster* v. *Fidelity Safe Deposit Co.*, 264 Mo. 89; *Pyle* v. *Springfield Marine Bank*, 330 Ill. App. 1.)

LEWIS, CONWAY and FULD, JJ., concur with LOUGHRAN, Ch. J.; THACHER, J., dissents in opinion in which DESMOND and DYE, JJ., concur.

**Judgment reversed, etc.**